**Irma L. POINDEXTER, Appellant,**

v.

**Leroy P. FOSTER, M.D., and Gerald Lange, M.D., Appellees.**

**No. 09 88 107 CV.**

Court of Appeals of Texas, Beaumont.

May 4, 1989.

Rehearing Denied May 24, 1989.

Bruce W. Cobb, Beaumont, for appellant.

Michael L. Baker, Curry L. Cooksey, Richard L. Scheer, Beaumont, for appellees.

## OPINION

BROOKSHIRE, Justice.

Appeal from the district court's order granting two motions for summary judgments in alleged medical malpractice cases. The movants for the summary judgments were Dr. Foster and Dr. Lange.

The Appellant sustained an injury to her right leg above the ankle by accidentally striking her leg on a metal bed railing. She said her family physician was called. She later was admitted to the emergency room of the Beaumont Medical and Surgical Hospital. There, she waited for her family physician, Dr. Lange. She swore that Dr. Lange was supposed to meet her at the emergency room. Irma's affidavit is long and detailed. The leg wound was bleeding rather profusely. She had been in the emergency room for an hour and a half. Hence, the attending emergency room physician, Dr. Leroy Foster, treated the wound. After this emergency room treatment, Dr. Foster referred Mrs. Poindexter to her family physician for all further treatment. Mrs. Poindexter attempted, again, to contact her regular family physician but that physician, Dr. Lange, did not return her telephone calls, Poindexter swore. Thereafter, Mrs. Poindexter developed complications from her wound and was hospitalized on at least two later occasions. The first complication occurred on or about February 7, 1984, when a hospital nurse opened Mrs. Poindexter's wound a second time even though accidentally. This was done when the nurse removed the stitches. Following that occasion, Mrs. Poindexter spent about three days in the hospital.

Another hospitalization occurred on February 24, 1984, when a Dr. Washburn, a specialist, treated the wound to prevent further infection. On that second hospitalization, Mrs. Poindexter spent another three days in the hospital. A skin graft was performed by Dr. Washburn, a specialist in the branch of medicine known as plastic surgery. She was released 17 days later. Mrs. Poindexter's position was that the wound had not properly healed before she saw Dr. Washburn. Later, in August of 1984, being approximately six months after the original striking of the leg against the metal part of the bed, Mrs. Poindexter went to a dermatologist, Dr. Charles Crim. He put a special medicated cast on her leg.

The Appellant was also instructed to seek out a Dr. Walker who took an x-ray revealing a foreign object of approximately three millimeters in length in Mrs. Poindexter's leg. Mrs. Poindexter states that she cannot walk any appreciable distance without suffering a certain amount of pain and swelling in the affected leg. Thereafter, Mrs. Poindexter brought suit against only Dr. Lange and Dr. Foster for negligence in the treatment of her leg. Both of these doctors moved for summary judgment. We are required to treat as true the Appellant's affidavit in this appeal, whether the affidavit is correct or not.

Appellant's point of error is the trial court erred in granting the summary judgments in favor of both of the Appellees, Dr. Foster and Dr. Lange. Regarding Mrs. Poindexter's position against Dr. Foster, we note that Mrs. Poindexter, upon entering the emergency room, had intended to seek the services of Dr. Lange who was her family physician. We view the position of Dr. Foster as being simply an emergency room physician, and that, according to the ethics and customs of the medical profession and fraternity, he turned the case over completely to her regular family physician, Dr. Lange. Dr. Foster treated Mrs. Poindexter only after Dr. Lange failed to come to the emergency room, according to Poindexter's affidavit. After Mrs. Poindexter was instructed to contact Dr. Lange to take over the case, *she did not see Dr.*

*Foster again.* Dr. Lange did take over the case medically and saw Mrs. Poindexter on two later occasions.

Dr. Wesley Washburn, a plastic surgeon, found that there *had been a formation of an ulcer on the Appellant's leg rather than an infection.* Dr. Washburn testified that he was familiar with the standards of the care of wounds in Jefferson County in 1984. He also stated that he was familiar with Mrs. Poindexter's accident and the subsequent medical care that she had received for that particular wound. In Dr. Washburn's deposition he unequivocally stated that he did not know what Dr. Lange did by way of treatment of Mrs. Poindexter. Dr. Washburn further unequivocally testified that, based on his expertise, experience and observation, he did not feel that there was any act or omission on the part of Dr. Foster that caused or contributed in any way to the delay of the healing of Mrs. Poindexter's leg wound.

The charges of negligence that the Appellant herein leveled against Dr. Foster's care and treatment seem to be that Dr. Foster should have administered a tetanus shot, that he allegedly allowed the wound to become infected, and that he failed to x-ray the wound. Dr. Washburn's testimony absolutely negated these charges. Furthermore, it is commonly understood medical ethics and practice that when an emergency room physician turns over a case to a regular family treating physician, as was done here, that the emergency room physician's duty toward the patient ceases. In this case the family physician undertook the management of the medical problems of Mrs. Poindexter.

■ The Appellant responded with an affidavit in which she was the affiant. It contained her sworn, factual observations in depth. Appellant failed to present any expert medical testimony to contravene the unequivocal testimony of the plastic surgeon. The plastic surgeon, Dr. Wesley W. Washburn, was certainly very well qualified to express an expert medical opinion as he had been a medical doctor practicing his

specialty in the Beaumont area continuously for about 35 years.

Dr. Washburn swore that Foster's action did not cause the leg wound to become infected, as Poindexter alleged. The uncontroverted clear, definite, expert medical testimony of Dr. Washburn was that he (Washburn) was treating a certain complication *of the original injury, which was described as a three-point laceration with weak points, and that Dr. Foster simply did nothing to contribute to the inability of the leg wound to heal.* Dr. Washburn's opinion was that, as applicable to Dr. Foster, the wound was not healing because Mrs. Poindexter was scratching it or interfering with it and she was not allowing it to heal normally.

This opinion was based on the proof of later facts that, once the area had been secluded with a Unna boot and, therefore, protected from scratching, the wound did heal. The Unna boot, according to Dr. Washburn, was entirely effective because, after the Unna boot was applied to the area of the wound, the wound (being an ulcer—not an infection), did become totally healed within a reasonable period of several weeks. When Dr. Washburn saw Mrs. Poindexter in the latter part of September of 1984, the wound or ulcer was totally healed.

Dr. Washburn further testified that the foreign body found on x-ray did not have any connection with the delay in healing of the wound. Dr. Washburn testified, unequivocally, that the wound in question was not an infected wound which obviously would be red, inflamed and swollen and would be a type of open wound from which an expert could culture bugs from the same. Washburn swore that Mrs. Poindexter sustained a contaminated wound and that the difference between a contaminated wound and an infected wound is grossly obvious to the trained eye in that the infected wound would be red, swollen and inflamed. Simply stated, Mrs. Poindexter did not file, in her response, any appropriate affidavit containing an expert medical testimony that contradicted or, in anywise,

contravened the relevant, positive deposition testimony of Dr. Washburn.

In fact, the only affidavit that she gave, by way of a response, was her own affidavit in which she swore that her further hospitalization was necessitated by her wound remaining essentially unattended for so long a time. Again, we are required to accept her affidavit as correct in this peculiar summary judgment proceeding. She further swore that, after she was released from the emergency room, she tried to reach Dr. Lange for two days but he did not return her telephone calls. A fair and balanced reading of Mrs. Poindexter's affidavit results in the logical conclusion that Dr. Lange, for whatever reasons, did not return her phone calls. Mrs. Poindexter swore that when Dr. Lange did finally see her in the hospital he stated to her that he did not have the time to take the stitches out of her leg that day, but he would do so on the following Monday. That hospital visit took place on a Friday. Although Dr. Lange did not remove the stitches the next Monday, the nurse did.

■ In motion for summary judgment practice, in order for a defendant to be entitled to a summary judgment, that defendant must disprove at least one essential element of the plaintiff's cause of action. *Gandara v. Novasad,* 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ); *Luna v. Daniel Intern. Corp.,* 683 S.W.2d 800 (Tex.App.—Corpus Christi 1984, no writ). The ultimate question, here, then, is whether there is competent summary judgment evidence from Mrs. Poindexter, in view of the expert testimony of Dr. Washburn, that establishes a genuine issue of fact existing as to a necessary element of the Appellant's alleged medical malpractice cause of action.

■ The modern rule has been established that, in regard to those alleged acts of medical malpractice that relate to the testing, diagnosis and treatment by a medical doctor, the affidavit of the Appellant, herself, a lay person, is incompetent evidence and cannot controvert the sworn testimony of a medical expert or a medical specialist. *Gandara, supra. See Hart v.*

*Van Zandt,* 399 S.W.2d 791 (Tex.1965); *Duncan v. Horning,* 587 S.W.2d 471 (Tex. Civ.App.—Dallas 1979, no writ); *TEX.R. CIV.P. 166a(e).* Mrs. Poindexter conceded she was unable to obtain expert testimony to controvert Dr. Washburn.

■ Upon a careful re-reading of Dr. Washburn's deposition, we affirm the granting of the motion for summary judgment in favor of Dr. Foster and Dr. Lange. We deem it appropriate and paramount to stress that the Plaintiff's petition for relief is based solely on negligent care in the treatment rendered to Mrs. Poindexter. We conclude that the Appellees have, by competent, expert medical testimony, negated, under the proper summary judgment practice, the alleged negligent care. Furthermore, the Appellees have negated the proximate cause fact issue as to any damages sustained by the Appellant. The Appellant has totally failed to respond with competent, expert medical testimony to preserve the proximate cause issue in her favor.

■ In summary, the Defendants below were entitled to prevail on their motions for summary judgment if they established as a matter of law that there existed no genuine issue of material fact in relationship to one or more of the essential elements of the Plaintiff's cause of action. *See Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970). The Defendants below successfully negated two of the elements of the Plaintiff's alleged negligent medical malpractice cause of action: firstly, a breach of the standard of care and, secondly, proximate causation. Since the Defendants had negated these two necessary elements of the Plaintiff's cause of action, then it was incumbent upon the Plaintiff to produce competent, expert medical testimony that would, in turn, raise issues of fact with regard to negligence and proximate cause; this the Plaintiff failed to do. *See Duncan v. Horning,* 587 S.W.2d 471 (Tex.Civ.App.—Dallas 1979, no writ); *Gandara v. Novasad,* 752 S.W.2d 740 (Tex.App.—Corpus Christi 1988, no

writ); *Shook v. Herman,* 759 S.W.2d 743 (Tex.App.—Dallas 1988, no writ).

AFFIRMED.